UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 5:22-CR-143-GFVT |
| v. | ) | |
| | ) | |
| CAITLIN BRUNER, | ) | |
| | ) | |
| Defendant. | ) | |

**DETENTION OPINION & ORDER**

The Indictment charges Defendant Caitlin Bruner ("Bruner") with conspiracy to distribute fentanyl, possession with intent to distribute fentanyl, and making false statements during the purchase of firearms.  [DE 1].  The United States orally sought detention under 18 U.S.C. § 3142(f)(1)(C) and (f)(1)(E) [DE 13], and the Court conducted a detention hearing on December 21, 2022 [DE 21].  For the reasons discussed in this opinion, the Court grants the United States' motion for detention.

## I.    BRA FRAMEWORK

Based on the charges, the Bail Reform Act ("BRA"), 18 U.S.C. § 3141, *et seq.*, imposes a presumption of detention as to both flight risk and danger. The Court assesses the presumption under the BRA and *United States v. Stone,* 608 F.3d 939, 945–46 (6th Cir. 2010).  *See also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) (imposing burden of production on defendant to produce "some evidence that he will not flee or endanger the community if released" in face of presumption); *United States v. Hernandez*, No. 1:02-CR-006, 2002 WL 1377911, at *2 (E.D. Tenn. Feb. 27, 2002) (crafting production burden as "the burden of producing probative,

1

credible evidence to rebut the presumption and support his [defendant's] contention that he will appear . . . and he does not pose a danger"). This is only a production burden, and it is "not heavy." *See Stone*, 608 F.3d at 945 (noting duty to "introduce at least some evidence"). An unrebutted presumption requires detention. A rebutted presumption remains a pro-detention statutory factor. *See id.*

Where a defendant rebuts the presumption, the burden shifts back to the United States. Detention premised on nonappearance requires preponderant evidence of flight risk. *See, e.g.*, *United States v. Patriarca*, 948 F.2d 789, 793 (1st Cir. 1991); *United States v. Curry*, No. 6:06-CR-82-DCR, 2006 WL 2037406, at *6 (E.D. Ky. Jul. 18, 2006). Danger-based detention, however, demands clear and convincing evidence that no combination of conditions will reasonably ensure community safety. 18 U.S.C. § 3142(f). The analyses are distinct. Conditions that sufficiently target nonappearance risk may not adequately address danger potential. *See United States v. Mercedes*, 254 F.3d 433, 436-37 (2nd Cir. 2001). Further, condition effectiveness inherently hinges on a defendant's predicted good faith compliance. *See United States v. Tortora*, 922 F.2d 880, 887 (1st Cir. 1990) (characterizing predicted compliance as critical release component); *United States v. Hir*, 517 F.3d 1081, 1092 (9th Cir. 2008) (noting the "critical flaw" in a set of proposed release conditions: "In order to be effective, they depend on [the defendant's] good faith compliance."); *id.* at 1093 n.13 (observing that, barring a "replica detention facilit[y]," the success of any condition combination necessarily "hinge[s] on [the defendant's] good faith compliance").

Evidence rules do not apply in the detention hearing context. 18 U.S.C. § 3142(f). The key is simply evidentiary reliability and accuracy. *See, e.g.*, *United States v. Webb*, 149 F.3d 1185 (Table), No. 98-1291, 1998 WL 381686, at *1 (6th Cir. June 22, 1998). Given hearing informality,

2

the Court properly considers a wide range of proof.  The nature and quality of proof, though, impacts its probative value and weight in the detention calculus.  The § 3142(g) factors ultimately drive the overarching analysis.

## II.   ANALYSIS

The Court heard proffer from counsel, testimony from two witnesses (ATF Agent Megan Knotts ("Agent Knotts") and Betty Crawford ("Crawford")), and legal arguments.

### A.   OVERCOMING THE PRESUMPTION

As a threshold matter, the Court finds Bruner produced enough evidence to overcome her presumption.  Namely, based upon the information contained in the pretrial services report ("PSR"), testimony of her grandmother (Crawford), and the proffer of fact by counsel, Bruner established some evidentiary basis that she is not a risk of nonappearance and danger.  Bruner has generally resided in Kentucky her entire life and has family connections in the community. Crawford is willing to have Bruner stay with her and watch her during the proposed pretrial period. Outside of the current charge, Bruner has minimal criminal history with no history of violence. Consequently, the burden of persuasion turns back to the United States.  However, "[t]he presumption in favor of detention does not vanish simply because a defendant comes forward with evidence to rebut it.  Were the presumption to vanish, 'courts would be giving too little deference to Congress' findings regarding this class.'"  *United States v. Lattner*, 23 F. App'x 363, 364, (6th Cir. 2001) (citing *United States v. Martir*, F.2d 1141, 1144 (2d. Cir. 1986)).

### B.   RISK OF DANGER

#### 1.   Nature and Circumstances of the Offense

The first BRA factor is the "nature and circumstances of the offense charge, including whether the offense . . . involves . . . a controlled substance [or] firearm[.]"  18 U.S.C. § 3142(g)(1). The nature and circumstances of Bruner's current offenses—conspiracy and possession with intent

3

to distribute fentanyl as well as firearm charges—favor detention.  Per the testimony of Agent Knotts, Bruner was actively buying firearms for co-Defendant J'Shan Rigsby as well as other individuals.  In that pursuit, Bruner had repeatedly lied to licensed federal firearms dealer indicating that she was purchasing the firearms herself.  Additionally, while law enforcement was investigating Bruner and others for the firearms crimes, Bruner was arrested for possessing 29 grams of fentanyl following a traffic stop.  Bruner admitted to law enforcement that the fentanyl was hers, that she was using the fentanyl, and that she was selling the fentanyl.

Drug distribution, at that quantity, is a dangerous offense that poses a serious risk of harm to the community.  *Stone.*, 608 F.3d at 947 n.6 ("And our Court routinely affirms, on dangerousness grounds, the pre-trial detention of run-of-the-mill drug dealers, even without any indication that the defendant is engaged in violence . . . .  To be sure, drug trafficking is a serious offense that, in itself, poses a danger to the community."); *United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases).  Moreover, when coupled with firearms and crimes involving firearms, the danger risk only increases.  *United States v. Flowers*, No. 3:05-CR-72, 2005 WL 1981364, at *4 (E.D. Tenn. Aug. 17, 2005) (observing that the "sale of drugs [ ] establish[es] a significant danger" and "[t]he addition of guns to the equation" would only increase it); *United States v. Taylor*, 289 F. Supp. 3d 55, 64 (D.D.C. 2018) (observing that "the combination of the distribution of drugs and the illegal possession" of firearms presented a serious danger to the community).

4

The first factor favors detention.

2.        **Weight of the Dangerousness Evidence & History and Characteristics**

The second factor gauges "the weight of the evidence against the person."  18 U.S.C. § 3142(g)(2) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release).  "This factor goes to the weight of evidence of dangerousness, not the weight of the evidence of defendant's guilt." *Stone*, 608 F.3d at 948.  The third BRA factor considers the history and characteristics of the defendant.  18 U.S.C. § 3142(g)(3) (directing courts to consider "the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings" and whether, at the time of the current offense the person was on probation or pretrial release).  Given that these factors often overlap, the Court analyzes them together.

As referenced in the first factor, there are serious danger concerns associated with the charges at issue that the Court takes seriously.  However, when the Court looks past that charge, Bruner has little else in her history that would suggest danger.  She has no other criminal history outside of traffic offenses.  There is no history of violence or misuse of firearms.  However, she was charged with possession of marijuana while on state pretrial release while these state criminal charges were pending.  18 U.S.C. § 3142(g)(3)(b).  Ultimately, fully considering Bruner's overall danger as well as her background and personal characteristics, these factors favor release.

### 3.    <u>Nature and Seriousness of the Danger Risk</u>

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4).  Given the drugs found in Bruner's possession, the Court has concerns about any ongoing drug trafficking activity.  *See United States v. Santiago-Pagan*, No. 1:08-CR-0424-01, 2009 WL 1106814, at *7 (M.D. Pa. Apr. 23, 2009) (concluding that the defendant's alleged involvement in the distribution of "a large quantity of narcotics cuts strongly against his motion for release pending trial" because "[t]he seriousness of the crimes alone . . . allows the court to draw the inference that defendant will simply continue his alleged narcotics activity if released") (collecting supportive cases).  However, given that Bruner has no history of drug possession (much less trafficking), the Court is suspect of a suggestion that her trafficking acts will continue.  In fact, the United States made no such argument, suggesting that Bruner's role in any assumed drug trafficking operation is minor.  Agent Knotts presented evidence that Bruner's role in obtaining firearms was repeated but also that it was driven by others, not Bruner herself.  The nature and seriousness of the risk of danger to the community posed by releasing Bruner is minimal and this final factor tips in favor of release.

In sum, while the first factor favored detention, the Court finds the remaining three factors favor release in terms of danger.  The Court finds that the United States has not shown, by clear and convincing evidence, that Bruner is a danger to the community.

### C.    <u>RISK OF NONAPPEARANCE</u>

Turning to nonappearance, the United States presented evidence and raised several specific issues concerning Bruner.

First, the allegations still concern a large quantity of controlled substances.  Congress and the Sixth Circuit have ascribed a strong belief that a person charged with such crimes has a "strong probability" that she will flee.  *United States v. Downsbrough*, No. 3:13-CR-61, 2013 WL

2447858, at *1 (E.D. Tenn. June 5, 2013) (citing *United States v. Stone*, 608 F.3d 939, 947 n. 6 (6th Cir. 2010)). Her admitted substance use disorder only furthers this risk. *See United States v. Valentin-Cintron*, 656 F. Supp. 2d 292, 296 (D.P.R. 2009) ("As a frequent drug user defendant constitutes a 'flight risk.'") (citing *The Federal Bail and Detention Handbook* and S. REP. NO. 225, 98th Cong. 1st Sess. 23, nn. 66, 68 (1983)). Also, Bruner does not have a strong employment history and is facing a long criminal sentence. *United States v. Stidham*, No. 3:10-CR-79, 2010 WL 2639925, at *3 (E.D. Tenn. June 25, 2010) (finding that a defendant's long unemployment favors detention); *United States v. Shuklin*, No. 19-4171, 2020 WL 2992522, at *1 (6th Cir. Mar. 18, 2020) (observing that "significant penalties," such as a maximum of 20 years in prison, "provide a strong incentive to flee"). Although these concerns are quite generalized, the Court fully recognizes these risks in tipping the scales toward nonappearance.

Next, Bruner has two prior failures to appear in traffic matters, something the Court generally discounts. *United States v. Munoz-Hernandez*, No. CR 12-0128 JB, 2012 WL 5476892, at *11 (D. N.M. Nov. 5, 2012) ("The Court can see that it may be more likely that a defendant would forget about a court date for a traffic violation than for a felony charge, for which the defendant faces a minimum of ten years' imprisonment."). However, in addition to those failures to appear, Bruner has also failed to appear on multiple drug tests while on pretrial release for the underlying state charges and left her home despite repeated warnings from probation not to do so while on electronic monitoring. These actions are not indicative of someone willing to abide by court conditions and willing to appear when directed, especially when coupled with the allegations that she has repeatedly provided false information when purchasing firearms. The facts, in total, make it difficult for the Court to trust Bruner.

Finally, the United States and Bruner countered over the safety and stability of her proposed residence, Crawford's home. Bruner indicated Crawford was a stable force in Bruner's life, would provide a secure home where Crawford was always present, and would ensure Bruner's compliance with pretrial conditions. The United States countered that Bruner's criminal activities have already taken place while Bruner was residing at Crawford's residence. And when Bruner was on a pretrial release, there were all kinds of activities at Crawford's home that were concerning. For example, Bruner failed to appear for drug tests and left the home when she was directed by probation not to leave. Bruner was charged with marijuana possession while living at Crawford's residence during pretrial release. Despite the current charges involving firearms and other family members living at the home who were convicted felons, two firearms were found at the residence when Bruner was arrested on the federal charges. Co-Defendant and Bruner's boyfriend, Rigsby, was found hiding at Crawford's residence while an arrest warrant was pending against him. Crawford sincerely indicated to the Court that she can serve as a third-party custodian, but there is little to suggest that she has control over the various activities at her residence. If anything, while Crawford may sincerely wish to ensure Bruner follows the conditions, the Court fears Bruner's release to Crawford's residence engenders more problems than it solves.

On balance, the Court concludes the United States has proven by a preponderance of evidence that Bruner presents a serious risk of nonappearance if released pending trial. The circumstances surrounding the charges, the failures to comply with state pretrial conditions, and the instability surrounding Crawford's residence compel the Court to find that there are that no condition or combination of conditions can reasonably assure the Court that Bruner will appear as required. As such, the BRA mandates detention based on the risk of nonappearance.

### III.    CONCLUSION

In sum, the Court finds that the United States proved by a preponderance of the evidence that Bruner is an irremediable nonappearance risk.  Therefore, the BRA mandates that Bruner remain in detention pending trial.  Accordingly, the Court grants the United States' oral detention motion.  The parties may appeal this Order under the terms of 18 U.S.C. § 3145(a).

Bruner is remanded to the custody of the Attorney General or to the Attorney General's designated representative for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Bruner must be afforded a reasonable opportunity for private consultation with defense counsel. On order of a court of the United States or on request of an attorney for the Government, the person in charge of the corrections facility must deliver Bruner to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Entered this the 30th day of December, 2022.

MATTHEW A. STINNETT
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF KENTUCKY